OPINION
{¶ 1} This case involves an appeal by Jacqueline and Carla Holbrook from the trial court's grant of summary judgment in favor of defendant State Farm Mutual Automobile Insurance Company ("State Farm").
 {¶ 2} On November 24, 2000, plaintiffs-appellants Jacqueline and Carla Holbrook filed a declaratory judgment complaint against defendant-appellee State Farm seeking a determination that State Farm was obligated to provide them with $1 million in underinsured/uninsured ("UM/UIM") motorist coverage to satisfy their claims arising from a November 26, 1998, automobile accident. On January 2, 2001, State Farm filed an answer denying coverage.
 {¶ 3} On May 1, 2002, State Farm filed a motion for summary judgment, asserting that as a matter of law it had no obligation to provide coverage to plaintiffs. On July 11, 2002, plaintiffs filed a memorandum in opposition thereto as well as a cross-motion for summary judgment.
 {¶ 4} On August 9, 2002, State Farm filed a memorandum opposing plaintiffs' motion. Plaintiffs filed a reply memorandum in support of their motion on August 19, 2002.
 {¶ 5} On September 20, 2002, the lower court granted the State Farm motion, and denied plaintiffs' motion. Plaintiffs filed a timely notice of appeal on October 9, 2002, thereby perfecting their appeal to this court.
 {¶ 6} The relevant facts in this matter are undisputed, and are as follows:
 {¶ 7} On November 26, 1998, Bill J. Holbrook and Billy Holbrook were killed in a motor vehicle crash on Snyder Church Road in Fairfield County, Ohio. These deaths were caused solely by the negligence of Bill J. Holbrook's daughter, Molly Holbrook. Molly Holbrook was an underinsured driver.
 {¶ 8} Plaintiff Jacqueline Holbrook is the mother of Bill J. Holbrook and the grandmother of Billy Holbrook. Plaintiff Carla Holbrook is the sister of Bill J. Holbrook and the aunt of Billy Holbrook.
 {¶ 9} At the time of the crash, Jacqueline was employed as a school nurse by the Southwest Licking Local School system. The Southwest Licking Local School system was insured under a policy of insurance issued by State Farm, bearing policy number F550 0184-B31-35C. The policy provided liability coverage with a $1 million dollar limit as well as UM/UIM coverage with a $1 million dollar limit. The policy provided liability coverage to the school district and its drivers for damages arising out of the operation of 15 school buses and a flatbed truck.
 {¶ 10} This policy separately defined who was an insured under the UM/UIM coverage of the policy. The policy stated that the term "Insured" included only those "persons" defined in the UM/UIM coverage. The term "person" was generally defined by the policy to mean a "human being," so as to make it clear that the UM/UIM coverage of the policy never applies to a corporate entity.
 {¶ 11} The pertinent portion of the policy further provides as follows:
 {¶ 12} "Who is an Insured
 {¶ 13} "Insured — means the person or persons covered by uninsured motor vehicle coverage.
 {¶ 14} "This is:
 {¶ 15} "1. the first person in the declarations;
 {¶ 16} "2. his or her spouse
 {¶ 17} "3. their relatives; and
 {¶ 18} "4. any other person while occupying
 {¶ 19} "a. your car, a temporary substitute car, a newly acquired car or a trailer attached to such car. Such vehicle has to be used within the scope of the consent of you or your spouse; or
 {¶ 20} "b. a car not owned by you, your spouse or any relative or a trailer attached to such a car. It has to be driven by the first person named in the declarations or that person's spouse and within the scope of the owner's consent.
 {¶ 21} "Such other person occupying a vehicle used to carry persons for a charge is not an insured.
 {¶ 22} "5. any person entitled to recover damages because of bodily injury to an insured under 1 through 4 above."
 {¶ 23} Appellants set out a single assignment of error:
 {¶ 24} "The trial court erred in finding that Plaintiffs-Appellants Jacqueline and Carla Holbrook are not entitled to underinsured motorist coverage under the State Farm policy."
 {¶ 25} The present matter was decided on summary judgment. Civ.R. 56(C) states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
 {¶ 26} Accordingly, summary judgment is appropriate only where (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Tokles Son, Inc. v. Midwestern Indemn. Co. (1992), 65 Ohio St.3d 621, 629, citing Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. "The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party meets its initial burden, the nonmovant must then produce competent evidence showing that there is a genuine issue for trial. Id.
 {¶ 27} Appellate review of summary judgments is de novo. Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588; Midwest Specialties, Inc. v. Firestone Tire Rubber Co. (1988),42 Ohio App.3d 6. We stand in the shoes of the trial court and conduct an independent review of the record. As such, we must affirm the trial court's judgment if any of the grounds raised by the movant in the trial court are found to support it, even if the trial court failed to consider those grounds. Dresher; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38.
 {¶ 28} Appellants argue the insurance policy language defining UM/UIM coverage is ambiguous and thus should be construed against the drafter, and that coverage should be found to exist. Appellants rely principally upon the holding in Scott-Pontzer v. Liberty Mutual Ins. Co. (1999), 85 Ohio St.3d 660. As did the trial court, we find that precedent inapplicable.
 {¶ 29} The coverage afforded here is simply not ambiguous, as it specifically names those covered. This is in marked contrast to the policy terms in Scott-Pontzer, in which the policy simply failed to define the term "who" is insured.
 {¶ 30} In Scott-Pontzer, Christopher Pontzer, an employee of Superior Dairy, Inc., was killed in an automobile collision caused by the negligence of an underinsured driver. Although there was no dispute that Pontzer was driving his wife's car and was not within the scope of his employment at the time of the collision, Pontzer's surviving spouse sought UIM coverage under Superior Dairy's commercial automobile insurance policy and its commercial umbrella/excess policy. The auto policy defined an "insured" as follows:
 {¶ 31} "B. Who Is An Insured
 {¶ 32} "1. You.
 {¶ 33} "2. If you are an individual, any family member.
 {¶ 34} "3. Anyone else occupying a covered auto, or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 35} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 36} The State Farm policy language before us does not share in its definition of insureds under the UM/UIM coverage, the policy language found to be ambiguous in Scott-Pontzer. Unlike the Scott-Pontzer decision, which apparently was limited to a corporation as an insured, the State Farm policy before us excludes corporations as "insureds" for the UM/UIM coverage. The State Farm policy affirmatively states that only "persons" may ever qualify as insureds and defines the term "person" as a human being. The policy then insures, on a daily basis, any and all occupants of specifically enumerated vehicles — 15 school buses and a truck. Plaintiffs-appellants have not demonstrated how this situation translates into UM/UIM coverage for them for the death of the school district employee's non-resident son and niece who were injured in their own vehicle.
 {¶ 37} The plaintiffs-appellants concede that they do not qualify as insureds under any of the explicit definitions set forth in the UM/UIM coverage of the State Farm policy. They also concede that the State Farm policy never attempts to insure a corporation for bodily injury under the UM/UIM coverage. Their argument is solely based upon the fact that the first three paragraphs of the definition section do not apply to anyone when the policy is issued to a corporation, leaving coverage to be found only under the fourth paragraph, which grants coverage to persons occupying one of the specifically identified district-owned vehicles. Appellants fail to cite any authority that would translate this into coverage for them by operation of law.
 {¶ 38} While we recognize that insurance policies should be given a liberal construction in the area of UM/UIM coverage, on the present facts we agree with the posture of appellee State Farm. The policy provisions in Scott-Pontzer are surely quite different with respect to the scope of uninsured coverage and do not guide our interpretation of the policy language before us. It is obvious that the trial court gave a rational review of the policy and correctly found no coverage there.
 {¶ 39} Thus, for the reasons as aforesaid, we affirm the well-reasoned decision of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE, P.J., and KLATT, J., concur.
Justice J. Craig Wright, retired of the Ohio Supreme Court, Assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.